FREDERIC MARCH HARVELL v. EDWARD SCHEIDT, COMMISSIONER OF THE DEPARTMENT OF MOTOR VEHICLES FOR THE STATE OF NORTH CAROLINA.

(Filed 18 March, 1959.)

**1. Constitutional Law § 7—**

    While the General Assembly may delegate power to find facts or determine the existence or nonexistence of a factual situation on which the operation of a law is made to depend or an agency of government is to come into existence, the General Assembly may not delegate to an agency authority to apply or withhold the application of the law in its absolute or unguided discretion.

**2. Automobiles § 1—**

    A license to operate a motor vehicle is a privilege in the nature of a right of which the licensee may not be deprived save in the manner and upon conditions prescribed by a valid statute.

**3. Same—**

    The revocation or suspension of a driver's license is no part of the punishment for the violation of traffic laws, but is solely to protect the public and to impress the offender with the necessity for obedience to the traffic laws, not only for the safety of the public but also for his own safety as well.

**4. Automobiles § 2:  Constitutional Law § 7—**

    G.S. 20-16 (a) (5) contains no fixed standard or guide for the Department of Motor Vehicles in determining whether or not a driver is an habitual violator of the traffic laws, but leaves it solely in the discretion of the Department to determine when a driver is an habitual violator, and therefore the statute is an unconstitutional grant of legislative power.

APPEAL by petitioner from *Mallard, J.,* 2 May Regular Criminal Term 1958 of WAKE.

The respondent issued an order suspending petitioner's driver's license, pursuant to the provisions of G.S. 20-16 (a) (5), for a period of six months, from 7 December 1957 to 7 June 1958, based on records of the Department of Motor Vehicles indicating that the petitioner had been convicted of the following offenses: "(1) April 4, 1952, failure to stop for a stop sign. (2) July 26, 1953, failing to stop for a stop sign. (3) April 12, 1956, speeding in excess of 55 m.p.h. (4) March 14, 1957, speeding in excess of 70 m.p.h. (plea of nolo contendere). (5) September 9, 1957, improper passing. (6) October 31, 1957, failure to yield the right of way."

At the request of the petitioner, a hearing upon the suspension order was held at the Department of Motor Vehicles (hereinafter

called Department) on 16 December 1957 and as a result thereof
the order of suspension was upheld but revised to cover the period
from 16 December 1957 to 17 March 1958, the license not having
been surrendered to the Department at the time of the hearing.

The petitioner appealed to the Superior Court, pursuant to the
provisions of G.S. 20-25, contending that the acts of the respondent
were arbitrary and unfounded in law. The petitioner did not sur-
render his driver's license until 31 December 1957.

The petitioner, having perfected his appeal in the Superior Court,
moved the court to require the return of his driver's license pending
the disposition of the appeal. The court granted the request and
pointed out that the suspension as fixed by the Department would
end at least 60 days before the appeal could be heard in the Supreme
Court. The court by consent of the petitioner and the respondent en-
tered an order, dated 13 January 1958, directing that the petitioner's
license be returned to him pending final adjudication of the appeal.

This cause was heard on its merits, on the pleadings, and on facts
stipulated by the parties. Among the stipulated facts pertinent to
this appeal, in addition to those hereinabove set out, are the following:

Neither the respondent, Edward Scheidt, nor the Department, has
adopted or promulgated any written rules and regulations designed
to enforce or administer G.S. 20-16 (a) (5), but the Director of the
Driver License Division of the Department has established a set of
certain criteria for considering traffic violations of record and evaluat-
ing such violations for the purpose of administering G.S. 20-16 (a)
(5); that said list of criteria has been furnished and is used by case-
reviewing officers, hearing officers and the Director of the Driver
License Division; that the list of traffic offenses and the evaluation
numbers according to the gravity and seriousness of the offenses is
as follows:

"6. Speeding over 55 MPH
6. Reckless driving
5. Violation resulting in accident
5. Passing stopped school bus
4. Failure to yield right of way
4. Passing at crest of hill, passing at intersection, passing on
    curves, improper passing
3. Driving on wrong side of road
3. Failure to stop for stop sign or signal
3. Speeding in restricted zone
2. Failure to give proper signal

2. Following too closely
2. Improper turns
2. Driving too closely
2. Improper lights, brakes, steering, etc.
1. All other violations
1. Non-moving violations creating a dangerous condition (overtime parking or loading zone violation not included)
2. Any accident."

In addition to the above criteria, the Director of the Driver License Division has further established an additional set of criteria to be considered in the suspension of a driver's license, pursuant to the provisions of G.S. 20-16 (a) (5), as follows:

"1—Age
2—Driving Experience
3—Examination Scores
4—Driving Record
    a—No. & frequency of violations
    b—No. & frequency of convictions
    c—Type of violation
5—Accidents
    a—Time & type of accident
    b—Experience
    c—Fault
6—Attitude."

The court below held that the defendant had been convicted of the traffic violations on the dates indicated hereinabove, and based on such violations the court found as a fact "that the petitioner is an habitual violator of the traffic laws of the State and that the order of suspension issued by the Department of Motor Vehicles should be affirmed." Judgment was entered accordingly, and the petitioner appeals, assigning error.

*Attorney General Seawell, Assistant Attorney General Pullen for Department of Motor Vehicles.*
*Charles W. Daniel for petitioner.*

DENNY, J. The question presented for determination on this appeal is whether or not the authority granted to the Commissioner of Motor Vehicles by the General Assembly in G.S. 20-16 (a) (5) to

revoke the petitioner's driver's license constitutes an unconstitutional delegation of legislative power.

G.S. 20-16 (a) provides: "The Department shall have authority to suspend the license of any operator or chauffeur without preliminary hearing upon a showing by its records or other satisfactory evidence that the licensee: * * * (5) Is an habitual violator of the traffic laws * * * *"

It appears from the record that during a period of five years, six months, and twenty-seven days, the petitioner was convicted six times of various offenses in violation of the traffic laws, as hereinabove set out. During this period the petitioner accumulated twenty-six points under the point system set up by the Director of the Driver License Division of the Department. It further appears by stipulation that neither the Commissioner nor the Department has adopted or promulgated any written rules and regulations designed to enforce or administer G.S. 20-16 (a) (5).

Moreover, under the point system used by the Director of the Driver License Division of the Department there is nothing to indicate how many points a driver must accumulate or over what period of time he must accumulate them, before he is deemed an habitual violator of the traffic laws. Therefore, it must be conceded that neither under the point system presently used by the Department but not adopted by it, nor under the statute G.S. 20-16 (a) (5), is there any fixed standard or guide to which the Department must conform in order to determine when a driver is an habitual violator of the traffic laws. The Department is given the authority to suspend a driver's license without a preliminary hearing, upon a showing by its records or other satisfactory evidence that the licensee is an habitual violator of the traffic laws, but the number and character of such violations of the traffic laws and the period of time during which such violations may have occurred, upon which the Department may base its finding, are left soley to the discretion of the Department.

In the case of *Coastal Highway v. Turnpike Authority*, 237 N.C. 52, 74 S.E. 2d 310, this Court, speaking through *Johnson, J.*, said: "Here we pause to note the distinction generally recognized between a delegation of the power to make a law, which necessarily includes a discretion as to what it shall be, and the conferring of authority or discretion as to its execution. The first may not be done, whereas the latter, if adequate guiding standards are laid down, is permissible under certain circumstances. 11 Am. Jur., Constitutional Law, Sec. 234. See also *Pue v. Hood, Comr. of Banks*, 222 N.C. 310, 22 S. E. 2d 896.

"As to this, it may be conceded that the line of demarkation between those essentially legislative functions which must be exercised by the Legislature itself, and those of an administrative nature, or involving mere details, which may be conferred upon another body or administrative agency, is sometimes vague and difficult to define or discern. *Provision Company v. Daves,* (190 N.C. 7) *supra.*

"Nevertheless, the legislative body must declare the policy of the law, fix legal principles which are to control in given cases, and provide adequate standards for the guidance of the administrative body or officer empowered to execute the law. This principle is implicit in the general rule prohibiting the delegation of legislative power, and is affirmed by numerous authoritative decisions of this Court. *Motsinger v. Perryman,* (218 N.C. 15) *supra; Provision Company v. Daves, supra; S. v. Harris,* 216 N.C. 746, 6 S.E. 2d 854; *S. v. Curtis,* (230 N.C. 169 *supra.* See also Annotation, 79 L. Ed. 474, 487.

"In short, while the Legislature may delegate the power to find facts or determine the existence or nonexistence of a factual situation or condition on which the operation of a law is made to depend, or another agency of the government is to come into existence, it cannot vest in a subordinate agency the power to apply or withhold the application of the law in its absolute or unguided discretion, 11 Am. Jur., Constitutional Law, Sec. 234." 60 C.J.S., Motor Vehicles, section 160, page 489.

In *South Carolina Highway Department v. Harbin,* 226 S.C. 585, 86 S.E. 2d 466, the Department had set up a point system without specific legislative authority and had adopted the practice that when the total of violation points charged against a driver reached a minimum of ten, the driver was interviewed by a member of the highway patrol for the purpose of determining whether the offender's license to drive should be suspended or whether it appeared from the circumstances he should be given another chance. If permitted to retain his license after the interview, any additional violation committed by him was deemed sufficient for an immediate suspension of his license. The statute involved was Section 46-172 of the 1952 Code of South Carolina, which read in pertinent part as follows: "For cause satisfactory to the Department it may suspend, cancel or revoke the driver's license of any person for a period of not more than one year."

The Supreme Court of South Carolina held the above statute was an unconstitutional delegation of legislative power. The Court said: " * * * in the grant of this authority, there is no standard except the personal judgment of the administrative officers of the Department."

The Court further held that the Department was without authority to adopt a Point System

In the case of *Thompson v. Smith*, 155 Va. 367, 154 S.E. 579, 71 A.L.R. 604, the Supreme Court of Appeals held invalid an ordinance of the City of Lynchburg which, after providing for mandatory suspension of licenses for certain causes, authorized the Chief of Police "to revoke the permit of any driver who, in his opinion, becomes unfit to drive an automobile on the streets of the city, * * *." The Court said: "That portion of the ordinance here in question which authorizes the Chief of Police 'to revoke the permit of any driver who, in his opinion, becomes unfit to drive an automobile on the streets of the city,' fails to declare the policy of the law and fix the legal principles which are to control the discretion of the Chief of Police in the revocation of licenses what constitutes unfitness to drive an automobile on the streets of the city; and is void because it delegates powers. essentially legislative to an administrative officer." See *Eastwood v. Wyoming Highway Department*, 76 Wyo. 247, 301P 2d 818. Cf. *Sturgill v. Beard* (Ky.), 303 S.W. 2d 908 and *Ross v. MacDuff*, 309 N.Y. 56, 127 N.E. 2d 806.

In *Butler v. Commonwealth*, 189 Va. 411, 53 S.E. 2d 152, the Court considered the constitutionality of Section 2154(a19) of the Virginia Code, Supp. 1948, which reads in pertinent part as follows: "Upon any reasonable ground appearing in the records of the Division, the Commissioner may, when he deems it necessary for the safety of the public on the highways of the State, and after notice and hearing as hereinbefore provided, suspend or revoke for a period not to exceed five years * * * the operator's or chauffeur's license of any person who is a violator of the provisions of the Motor Vehicle Code, as amended * * *."

Butler's license had been suspended pursuant to the above statute. He appealed to the Circuit Court where the case was submitted to a jury and the jury was instructed as follows: "If you believe from a preponderance of the evidence that James T. Butler is an habitual violator of the provisions of the Motor Vehicle Code or Motor Vehicle Laws, then you should find for the Commonwealth." The jury returned a verdict upholding the order of suspension made by the Commissioner.

The Attorney General insisted that if the records of the office of the Motor Vehicles Commissioner revealed that the appellant is an habitual violator of any of the provisions of the motor vehicle laws, this is all that is necessary to support the action of the Commissioner in any case. The Court said: "We cannot agree that this is true. In

the first place, there is no standard to determine what constitutes an 'habitual violator' of such laws, nor does the Attorney General's contention make it necessary that the particular provisions of law habitually violated are of such a nature that their violation will jeopardize the safety of the public on the highways, or that similar violations in the past have actually had such a result. For instance, a motor vehicle owner might habitually park his car longer than the time allowed by law. Such violations, however, could hardly be said ordinarily to impair the safety of the highways. The argument also leaves out of consideration the question of the duration of the suspension and whether the time fixed by the Commissioner is reasonably necessary to accomplish the legislative purpose." The Court held the statute valid and pointed out five controls or limitations upon the power of the Commissioner, which must be observed in connection with the suspension or revocation of an operator's license pursuant thereto.

The Court further pointed out, however, that while the instruction given the jury was erroneous, the statute contemplated that the trial court should hear the matter without a jury. The verdict below was reversed and remanded to the end that the trial court should hear the matter only on such evidence as related to the question whether it was necessary "for the safety of the public on the highways" to revoke the operator's license. *Lamb v. Clark*, 199 Va. 374, 99 S.E. 2d 597.

There seems to be serious differences of opinion as to the authority of a motor vehicle department to set up a point system without express legislative authority. Some of the courts hold that if such a system is to be used it must be set up by the Legislature. *South Carolina Highway Department v. Harbin, supra.* For *contra* opinion see *Sturgill v. Beard, supra.*

In Florida, the drivers' license statute provides for the suspension of an operator's license if the licensee: "Is an habitual violator of the traffic laws by virtue of having been convicted of five traffic laws (excluding parking meter fines),within an eighteen months period; maximum suspension period to be nine months; provided further, that any operator or chauffeur who shall have been convicted of more than eight traffic law violations (excluding parking meter fines) within a three year period shall have his license revoked for not less than one year by the department * * *." Section 322.27 (d) Volume 1, Florida Statutes of 1957.

A point system has been established by legislative action in Nebraska, Section 39-7, 128; and how the point system shall be applied

is set forth in Section 39-7;129, Revised Statutes of Nebraska, 1957 Cumm. Supp. *Durfee v. Ress,* 163 Neb. 768, 81 N.W. 2d 148.

In this jurisdiction, a license to operate a motor vehicle is a privilege in the nature of a right of which the licensee may not be deprived save in the manner and upon conditions prescribed by a valid statute. *In re Wright,* 228 N.C. 584, 46 S.E. 2d 696.

It is well to keep in mind that the suspension or revocation of a driver's license is no part of the punishment for the violation or violations of traffic laws. It will be deemed that the court or courts in which the licensee was convicted, meted out the appropriate punishment under the facts and circumstances of each case. The purpose of the suspension or revocation of a driver's license is to protect the public and not to punish the licensee. However, the suspension or revocation of a driver's license should serve to impress such offender with the necessity for obedience to the traffic laws and regulations, not only for the safety of the public but for his own safety as well.

In light of the authorities cited herein, in our opinion, G.S. 20-16 (a) (5) does not contain any fixed standard or guide to which the Department must conform in order to determine whether or not a driver is an habitual violator of the traffic laws. But, on the contrary, the statute leaves it to the sole discretion of the Commissioner of the Department to determine when a driver is an habitual violator of such laws. This we hold to be an unconstitutional grant of legislative power.

The judgment of the court below is
Reversed.