STATE OF NORTH CAROLINA,
v.
WILLIAM BRANDON MOSLEY.
No. COA09-1060.
Court of Appeals of North Carolina.
Filed May 4, 2010.
Attorney General Roy Cooper, by Assistant Attorney General Joan M. Cunningham, for the State.
Glenn Gerding for Defendant.

UNPUBLISHED OPINION
STEPHENS, Judge.

I. Procedural Background
On 28 April 2008, Defendant William Brandon Mosley was indicted on one count of first-degree burglary, four counts of second-degree kidnapping, and one count of robbery with a dangerous weapon. Defendant was tried before a jury during the 9 February 2009 criminal session of Rutherford County Superior Court. On 13 February 2009, the jury returned verdicts of guilty on all counts. The trial court found Defendant to be a prior record level II offender, and sentenced Defendant to consecutive prison terms totaling 241 to 336 months. Defendant gave notice of appeal in open court.

II. Evidence
The State presented evidence tending to show the following: At approximately 3:00 a.m. on 3 April 2008, Fernando Meza Castro, his wife, Sanjuana Rodrigues Duran, and their two children, six-year-old son Junior and eighteen-month-old daughter Joseline, were sleeping in their mobile home when Fernando was awakened by a noise. Thinking his son had dropped something, Fernando started toward his son's bedroom to investigate. On the way, Fernando encountered four men pointing guns at him. They told him to turn around and not look at them. The men, three black and one white, had their noses and mouths covered by handkerchiefs. One of the men held a handgun and two of the others, including the white man, held shotguns. The men disconnected the telephone and took Sanjuana's cellular telephone from her.
The men asked for money. Fernando went into his son's bedroom, retrieved a sock containing about one thousand dollars in cash, and handed the money to one of the intruders. The men also took Fernando's wallet and cellular phone. They then took Fernando and his wife and children into the bathroom. They tied Fernando and his wife by their hands and legs with electric cable. They told Junior to take his sister and get into a closet. They also asked Fernando and his wife for their car keys. They took Sanjuana into the kitchen so she could locate the keys. When the alarm system on one of the vehicles went off, the men fled from the house. After Sanjuana untied herself and Fernando, the family went to the home of Fernando's brother-in-law, who called 911 for them.
Kevin Randall Crain, a white man, testified for the State that he, Defendant, and two other men, armed with a revolver and sawed-off shotguns, broke into a mobile home occupied by a man, his wife, and two children. Defendant forced the occupants into a bathroom. The men ransacked the mobile home searching for illegal drugs. The woman retrieved a set of car keys from a mantel. Someone hit the alarm button on the keys, causing the alarm to sound. The four men ran out of the house. Defendant subsequently gave Crain $80 in cash out of a wallet.
Brittany Bridges testified that on or about 3 April 2008, Defendant gave her a cellular telephone, which she used for about one week until it was taken from her by a police officer. The telephone was subsequently identified as the one taken from Fernando.
Records from Verizon Wireless, the service provider for the cellular phone belonging to Fernando, showed that ten calls were made from Fernando's cellular telephone to Defendant's girlfriend's telephone number on 3 and 4 April 2008.
Junior testified that four men, three black and one white, came into his house one night while he was sleeping. One of the black men told him and his sister to get into a closet. He identified Crain as one of the four intruders. He could not identify Defendant as one of the intruders.
Fernando and Sanjuana both testified that they could not identify the perpetrators, although Sanjuana stated that Defendant's eyes looked like the eyes of one of the intruders.
Michelle Abernathy testified for the State that she was Defendant's girlfriend on 3 April 2008 and that Defendant was not with her during the evening of 2 April or the morning of 3 April 2008. She further testified that she received several telephone calls from Defendant at a telephone number she had never previously seen and that Defendant did not keep that telephone for long.
Defendant testified in his own defense that he did not commit any of the charged offenses. He further testified that he was with his then-girlfriend, Michelle Abernathy, in Gastonia on the morning of 3 April 2008, and that the cell phone he gave to Brittany Bridges was given to him by Crain in exchange for crack cocaine.
Jimmy Mask also testified on Defendant's behalf that Crain had told him he was accusing Defendant of participating in the crimes in retaliation for Defendant's having cheated Crain out of money and drugs.

III. Discussion
By the sole assignment of error brought forth in his brief to this Court, Defendant contends that the trial court committed constitutional error by prohibiting Defendant from cross-examining Crain about an unrelated criminal charge pending against Crain. Defendant argues that this error violated his constitutional right to confront the witnesses against him.
"`Appellate courts will not ordinarily pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the trial court.'" State v. Morrow, ___ N.C. App. ___, ___, 683 S.E.2d 754, 758 (quoting State v. Cumber, 280 N.C. 127, 131-32, 185 S.E.2d 141, 144 (1971)), disc. review denied, ___ N.C. ___, __ S.E.2d __ (2009). Furthermore, "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(b)(1).
At trial, immediately before Crain was called to the stand to testify, the State made a motion in limine to prohibit Defendant from cross-examining Crain about a charge of common law robbery, arising out of events unrelated to the events at issue in this case, pending against Crain. [T. 110-112]. Upon inquiry by the trial court, Defendant explained that he intended to question Crain about the pending charge under Rule 608(b) of the North Carolina Rules of Evidence as a "specific instance[] of conduct" which would reflect on "whether or not [Crain] is telling the truth in this case." [T p 112] Crain's attorney indicated to the trial court that he had advised Crain to exercise his right against self-incrimination as to that charge and, thus, not to answer any questions about it.
The trial court concluded that any questioning regarding the pending charge would not be admissible or have any value under Rule 608(b). The trial court noted that "[i]t would be nothing more than a question and then a refusal to answer any information about the incident." [T p 116] Thus, the trial court allowed the State's motion. [T p 116, 117]. Defendant made no objection to the trial court's ruling and made no attempt to question Crain about the pending charges.
As it does not affirmatively appear from the record that the issue of Defendant's constitutional right to cross-examine Crain about the pending criminal charge was "raised and passed upon in the trial court[,]" Morrow, ___ N.C. App. at ___, 683 S.E.2d at 758 (citation and quotation marks omitted), or that Defendant timely objected to the trial court's ruling allowing the State's motion in limine to prohibit such questioning, this issue is not properly before us for appellate review. The assignment of error upon which Defendant's argument is based is dismissed.
Although the record contains additional assignments of error, Defendant failed to argue them in his brief, and they are deemed abandoned. N.C. R. App. P. 28(a).
DISMISSED.
Judges ERVIN and BEASLEY concur.
Report per Rule 30(e).