NO. COA13-1181

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

STATE OF NORTH CAROLINA

    v.

PHILLIP MARK JONES

Craven County
No. 98 CRS 915


Appeal by defendant from order entered 7 February 2013, *nunc pro tunc* to 25 January 2013, by Judge Benjamin G. Alford in Craven County Superior Court. Heard in the Court of Appeals 22 April 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Joseph Finarelli, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Jon H. Hunt, for defendant.*

HUNTER, Robert C., Judge.

Defendant Phillip Mark Jones appeals the order requiring him to enroll in satellite-based monitoring ("SBM") for the duration of his post-release supervision. On appeal, defendant argues that: (1) the trial court lacked subject matter jurisdiction to order SBM because the State presented no evidence that defendant was a resident of Craven County at the time of the SBM hearing; and (2) the trial court's "additional

findings" supporting the highest possible level of supervision and monitoring were not supported by competent evidence.

After careful review, we reverse the SBM order.

## Background

On 15 January 1998, defendant pled guilty to statutory rape; the trial court sentenced him to 173 months to 217 months imprisonment ("the 1998 offense"). While defendant was serving his prison sentence, the North Carolina Department of Public Safety ("DPS") sent him notice that it had scheduled an SBM determination hearing in Craven County Superior Court after making the initial determination that defendant fell into a category that made him eligible for SBM. DPS claimed that it made that determination based on defendant's 1998 conviction in Craven County which "involv[ed] the physical, mental, or sexual abuse of a minor." Defendant acknowledged that he received the notice by signing the letter on 9 October 2012.

Prior to the SBM hearing, defendant submitted to a STATIC-99 assessment, the tool used by the Division of Adult Correction for assessing a sexual offender's likelihood for reoffending. Defendant earned a score of three points, which indicated a "moderate-low" risk of reoffending. The results of the STATIC-99 were submitted to the trial court at defendant's SBM hearing.

The trial court held the SBM hearing on 25 January 2013. Defendant stipulated that he had received notice of the hearing. As for the prior conviction, the State submitted evidence showing that, in 1994, defendant had been initially charged with first degree sex offense; however, the prosecuting attorney had reduced the charge to assault on a female, to which defendant pled guilty (94 CR 1252) ("the 1994 offense"). In defendant's file, the trial court noted that there was a 1997 report from Dorothea Dix Hospital evaluating defendant; the psychiatric evaluation was completed before his 1998 trial for statutory rape. Although the trial court reviewed the Dix report, it "ascribe[d] no significance" to it given that it was over fifteen years old. The trial court asked defendant's probation officer how defendant was "doing" on probation; the officer reported that defendant has reported to all his office appointments, has not missed a curfew, and has been paying the money he owes.

On a standard, preprinted AOC form, the trial court made the following findings: (1) defendant was convicted of a reportable conviction; (2) defendant fell into at least one of the categories requiring SBM; (3) the District Attorney scheduled a hearing in the county in which defendant resided and

provided adequate notice of the hearing; and (4) defendant's 1998 conviction involved the physical, mental, or sexual abuse of a minor. The trial court made two "additional findings": (1) there was a short period of time from the conclusion of defendant's supervision for the "prior sexual offense" in 94 CR 1252 to reoffending ("additional finding no. 1"); and (2) there was a similarity between the victims in both age and sex ("additional finding no. 2"). Based on these "additional findings," the trial court ordered that defendant enroll in the highest possible level of supervision and monitoring until his post-release supervision ended for the 1998 offense (at some point in October 2017). Defendant filed timely notice of appeal.

## Standard of Review

For SBM enrollment, "the trial court is statutorily required to make findings of fact to support its legal conclusions." *State v. Morrow*, 200 N.C. App. 123, 126, 683 S.E.2d 754, 757 (2009), *aff'd per curiam*, 364 N.C. 424, 700 S.E.2d 224 (2010). On appeal, this Court "review[s] the trial court's findings of fact to determine whether they are supported by competent record evidence[.]" *State v. Kilby*, 198 N.C. App. 363, 367, 679 S.E.2d 430, 432 (2009). Moreover, the Court

reviews the trial court's conclusions of law for "legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found." *State v. Clark*, 211 N.C. App. 60, 70, 714 S.E.2d 754, 761 (2011).

## Arguments

### I. Subject Matter Jurisdiction

First, defendant argues that the trial court lacked subject matter jurisdiction over him to order SBM. Specifically, defendant contends that the State failed to present any evidence that defendant was a resident of Craven County at the time of the hearing; therefore, the trial court's finding that the hearing was held in the county of defendant's residence was not supported by competent evidence. Based on *State v. Mills*, __ N.C. App. __, 754 S.E.2d 674 (2014), we dismiss defendant's argument.

Pursuant to N.C. Gen. Stat. § 14-208.40B(b), "[i]f the [DOC] determines that the offender falls into one of the categories described in [N.C. Gen. Stat. §] 14-208.40(a), the district attorney, representing the [DOC], shall schedule a hearing in superior court for the county in which the offender resides." Defendant argues that although he did not challenge the location of the hearing before the trial court, this issue

may be raised for the first time on appeal since it addresses subject matter jurisdiction.

In support of his argument, defendant cites two unpublished cases. However, this Court's recent published opinion in *Mills*, is controlling. In *Mills*, the defendant did not argue at his SBM hearing that it was not being held in the county of his residence. On appeal, the defendant contended that: (1) he could raise this issue for the first time on appeal because it involved subject matter jurisdiction; and (2) there was no competent evidence presented at the hearing that defendant resided in Buncombe County, where the SBM hearing occurred. *Id.* at ___, 754 S.E.2d at 677. After noting that SBM hearings are civil in nature, the *Mills* Court rejected the defendant's characterization of his argument as one challenging subject matter jurisdiction; instead, the Court concluded that "while the superior court has subject matter jurisdiction over SBM hearings, the requirement that the hearing be held in the superior court in the county in which the offender resides relates to venue." *Id.* Thus, the defendant could not raise his venue challenge for the first time on appeal because it had been waived. *Id.*

Similarly, here, when defendant stipulated that he had received notice of the hearing, he did not raise any argument that he was not a resident of Craven County. Because the requirement that the SBM hearing be held in the county in which defendant resided relates to venue, not subject matter jurisdiction, *id*., defendant's failure to raise the issue before the trial court waived his ability to raise it for the first time on appeal, and this argument is dismissed.

**II. The "Additional Findings"**

Next, defendant challenges the two "additional findings" the trial court made in requiring defendant enroll in the highest level of supervision and monitoring. Specifically, with regard to "additional finding no. 1," defendant contends that there was no evidence that defendant had committed a "prior sexual offense" or that the present offense was committed within a "short period of time from [the] conclusion of supervision" for the 1994 conviction of assault on a female. Additionally, defendant alleges that there was no evidence presented that the victims in the 1994 and 1998 offenses were similar in age and sex, which was noted in the trial court's "additional finding no. 2." Consequently, defendant argues that because these findings were not supported by competent evidence and defendant

was assessed as a "moderate-low" risk, the trial court erred in ordering him to enroll in the highest level of supervision and monitoring. We agree.

"This Court has previously held that a DOC risk assessment of 'moderate,' *without more*, is insufficient to support the finding that a defendant requires the highest possible level of supervision and monitoring." *State v. Green*, 211 N.C. App. 599, 601, 710 S.E.2d 292, 294 (2011) (quoting *Kilby*, 198 N.C. App. at 369-70, 679 S.E.2d at 434). A trial court may order a defendant receive the highest level of supervision and monitoring if it "makes 'additional findings' regarding the need for the highest possible level of supervision and where there is competent record evidence to support those additional findings." *Id.* (citing *State v. Morrow*, 200 N.C. App. 123, 130-34, 683 S.E.2d 754, 760-62 (2009), *aff'd per curiam*, 364 N.C. 424, 700 S.E.2d 224 (2010)). However, if a defendant is assessed as a "moderate" risk and the State presented no evidence to support findings of a higher level of risk or to support the requirement for "the highest possible level of supervision and monitoring[,]" the trial court's order must be reversed. *Kilby*, 198 N.C. App. at 370-71, 679 S.E.2d at 434. In contrast, if the State presented any evidence at the SBM hearing that would

support the highest level, "it would be proper to remand this case to the trial court to consider the evidence and make additional findings." *Id*. at 370, 679 S.E.2d at 434.

### A. "Additional Finding No. 1" – Short Period of Time between Conclusion of Supervision for Defendant's "Prior Sexual Offense" and Reoffending

First, defendant contends that there was no competent evidence introduced at the hearing to support the trial court's finding that defendant was convicted of a "prior sexual offense" or that the 1998 offense was committed within a short period of time from the conclusion of supervision for the 1994 offense.

At the SBM hearing, the State introduced evidence that, although defendant had initially been charged with first degree sex offense in 1994 (94 CR 1252), that charge was reduced and defendant pled guilty to assault on a female. The crime of assault on a female is not a sexual offense, a point which the State concedes. Therefore, that part of the trial court's finding—that defendant had been convicted of a "prior sexual offense"—was not supported by competent evidence.

With regard to defendant's contention that there was no competent evidence presented to support the trial court's "additional finding" that there was a short period of time between the conclusion of his probation for the 1994 nonsexual

offense before he committed the 1998 sexual offense, his argument is without merit. Initially, it should be noted that the trial court classified defendant's probation as "supervised" for the 1994 offense. However, there is no evidence in the record to support this classification; the ACIS print-out submitted to the trial court for defendant's 1994 offense only indicated that defendant received three years of probation. Notwithstanding this classification, the ACIS print-out clearly indicated that defendant was sentenced to two years imprisonment on 30 March 1994 for assault on a female, but that sentence was suspended and defendant was placed on three years of probation. The offense date for the 1998 sexual offense was 19 August 1997, approximately three years and five months after defendant was sentenced for the 1994 nonsexual offense. While defendant is correct in that it is not exactly clear when defendant ended his probation for the 1994 offense, the print-out supports a finding that a short amount of time elapsed between the end of probation for the 1994 offense, sometime around April 1997, and the date of offense for the 1998 conviction, August 1997. Accordingly, part of "additional finding no. 1"—that defendant committed the 1998 offense soon after his probation for the 1994 offense ended—was supported by competent evidence. Thus, it may be

considered when determining whether the trial court's determination that defendant requires the highest level of supervision and monitoring "reflect[s] a correct application of law to the facts found." *Kilby*, 198 N.C. App. at 367, 679 S.E.2d at 432.

> B. **"Additional Finding No. 2" – "Similarity in Victims' Age and Sex"**

Initially, it should be noted that the State concedes, and we agree, that the trial court's "additional finding no. 2"—similarity of victims in age and sex—was not supported by competent record evidence because the only documents establishing this finding were the 1997 Dorothea Dix documents. Citing *State v. Mixion*, 110 N.C. App. 138, 150, 429 S.E.2d 353, 370 (1993), since those documents were not offered into evidence before the trial court nor did defendant stipulate to their contents, the State concedes that the evidence was insufficient to support this finding. Therefore, it may not provide support for the trial court's determination that defendant required the highest level of monitoring and supervision.

> C. **Does the Evidence that Defendant Committed the 1998 Offense Within a Short Period After Completing Probation for the 1994 Nonsexual Offense Along with his "Moderate-Low" Risk of Reoffending Support the Trial Court's Determination That Defendant Required the Highest Level of Supervision and Monitoring?**

Finally, we must determine whether the "additional finding" that there was a short period of time between the end of probation for the 1994 offense, a nonsexual offense, and committing a sexual offense supports the conclusion that defendant requires the highest possible level of supervision and monitoring. We conclude that this "additional finding" does not, and the trial court's determination is "not a correct application of the law to the facts found," *Id.* at 367, 679 S.E.2d at 432. A defendant's "risk of reoffending" is based on the risk of the defendant committing another sexual offense. Here, the only conviction that the trial court may use in accessing defendant's risk of reoffending is the 1998 offense since that offense constitutes the only sexual offense defendant was convicted of; in contrast, the 1994 offense was a nonsexual offense and does not indicate any increased risk that he would commit another sexual offense. Consequently, this finding does not support a conclusion that defendant is at a high risk of reoffending and does not support a conclusion that defendant requires the highest possible level of supervision and monitoring.

Furthermore, we conclude that the State presented no other evidence to support the trial court's determination. *See id.*

(noting that if "evidence was presented which could support findings of fact which could lead to a conclusion that 'the defendant requires the highest possible level of supervision and monitoring[,]' . . . it would be proper to remand this case to the trial court to consider the evidence and make additional findings"). The fact that defendant was originally charged with a sexual offense, established by the ACIS print-out indicating this initial charge, but pled to the lesser, nonsexual offense of assault on a female would not support a determination that defendant required the highest level of supervision and monitoring. In other words, the underlying facts of the 1994 offense may not be considered by the trial court in determining the level of supervision and monitoring a defendant requires for purposes of SBM. In support of this conclusion, we note that this Court has repeatedly held that the underlying facts of a defendant's conviction may not be used to determine whether the defendant committed an aggravated offense under section 14-208.6(1a). *See State v. Boyett*, __ N.C. App. __, __, 735 S.E.2d 371, 380 (2012) ("In determining whether a particular crime constitutes an aggravated offense, the trial court is only to consider the elements of the offense of which a defendant was convicted and is not to consider the underlying factual scenario

giving rise to the conviction.") (internal quotation marks omitted); *State v. Davison*, 201 N.C. App. 354, 364, 689 S.E.2d 510, 517 (2009) ("[W]hen making a determination pursuant to N.C.G.S. § 14-208.40A, the trial court is only to consider the elements of the offense of which a defendant was convicted and is not to consider the underlying factual scenario giving rise to the conviction."). Thus, applying this analysis, we hold that the trial court may only consider the offense of which a defendant was convicted for purposes of determining what level of supervision and monitoring a defendant requires for SBM.

In summary, since the State presented no other evidence which could tend to support a determination of a higher level of risk that would require the highest level of supervision and monitoring other than his STATIC-99 score of moderate-low risk, the trial court's order must be reversed. *See Kilby*, 198 N.C. App. at 370-71, 679 S.E.2d at 434 (reversing the SBM order when the State presented no evidence which tended to support a determination of a higher level of risk than the 'moderate' rating assigned by the DOC). In fact, it should be noted that the only other evidence submitted at the SBM hearing supported the opposite conclusion. Specifically, defendant's probation officer indicated that defendant was fully cooperating with his

post-release supervision, which might support a finding of a lower risk level, but not a higher one. Additionally, although he had not found work at the time of the SBM hearing, he was living with his mother and father, and his father attended the hearing, indicating some familial support. Thus, given that the only "additional finding" supported by competent evidence—that defendant committed the 1998 sexual offense shortly after ending probation for the 1994 nonsexual offense—would not support a higher level of risk and that the State presented no other evidence showing that defendant required the highest level of monitoring and supervision, we reverse the trial court's SBM order.

## Conclusion

Because the State presented no evidence other than defendant's moderate-low STATIC-99 risk assessment to support a finding that defendant required the highest level of supervision and monitoring, we reverse the SBM order.


REVERSED.

Judges BRYANT and STEELMAN concur.