IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-1148

Filed 6 August 2024

Brunswick County, No. 22 CRS 276380

STATE OF NORTH CAROLINA

v.

CHAD DAVID BARTON, Defendant.

Appeal by Defendant from judgments entered 1 May 2023 by Judge Jason C. Disbrow in Brunswick County Superior Court. Heard in the Court of Appeals 14 May 2024.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Joseph Finarelli, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Brandon B. Mayes, for Defendant-Appellee.*

CARPENTER, Judge.

Chad David Barton ("Defendant") appeals from the trial court's final judgments and the trial court's satellite-based monitoring ("SBM") orders. On appeal, Defendant argues that the trial court erred by: (1) ordering Defendant to submit to SBM; and (2) sentencing Defendant to probation after his post-release supervision. After careful review, we agree with Defendant. We therefore reverse the SBM orders without remand, and we vacate the probation judgments and remand to the trial court.

## I. Factual & Procedural Background

During the 1 May 2023 criminal session of Brunswick County Superior Court, Defendant pleaded guilty to four counts of second-degree exploitation of a minor. The trial court entered four judgments. In the first judgment, the trial court sentenced Defendant to an active sentence of between twenty-five and ninety months of imprisonment. Second-degree exploitation of a minor is a reportable offense under section 14-208.6, so the first judgment required Defendant to submit to five years of post-release supervision. *See* N.C. Gen. Stat. §§ 14-208.6(4), 15A-1368.2(c) (2023).

In the next three judgments, the trial court suspended each active sentence for sixty months of probation, to run consecutively with the first judgment. In these judgments, the trial court specified that probation would begin "at the expiration of the sentence" imposed in the first judgment, as opposed to "when the defendant is released from incarceration." The trial court orally reiterated that "probation is not going to begin to run until the conclusion of his post-release supervision."

The trial court then moved to an SBM hearing. SBM is a system that provides (1) "[t]ime-correlated and continuous tracking of the geographic location of the subject using a global positioning system based on satellite and other location tracking technology" and (2) "[r]eporting of [the] subject's violations of prescriptive and proscriptive schedule or location requirements." N.C. Gen. Stat. § 14-208.40(c)(1)–(2) (2023). Other than Defendant's STATIC-99R results, the State offered no evidence concerning SBM.

A STATIC-99R "is an actuarial instrument designed to estimate the probability of sexual and violent recidivism among male offenders who have already been convicted of at least one sexual offense against a child or non-consenting adult." *State v. Morrow*, 200 N.C. App. 123, 125 n.3, 683 S.E.2d 754, 757 n.3 (2009) (quoting N.C. Dep't of Correction Policies–Procedures, No. VII.F Sex Offender Management Interim Policy 9 (2007)). Defendant scored a "1" on his STATIC-99R, placing him in the "low risk range" for recidivism.

Based on Defendant's STATIC-99R, the trial court orally ordered Defendant to submit to five years of SBM. Specifically, the trial court said:

> That based on a risk assessment by the Department of Adult Correction and Juvenile Justice, specifically, the Static-99R, which is incorporated herein by reference, the Court finds that the defendant received a total score of 1, which indicates that the defendant is at average risk for sexual recidivism. That based on this, the Court finds that the defendant requires the highest possible level of supervision and monitoring, and satellite-based monitoring constitutes a reasonable search of the defendant in this case. The Court therefore orders that upon release from imprisonment, the defendant shall enroll in satellite-based monitoring for a period of five years. And the same findings, obviously, on the suspended sentence.

The trial court then entered two written SBM orders, which required Defendant to submit to a total of five years of SBM after his release from prison. The trial court did not make additional findings concerning SBM.

On 12 May 2023, Defendant filed written notice of appeal. The notice, however,

did not state that the appeal was to this Court, and the notice did not reference the judgment or order from which Defendant appealed. On 2 June 2023, Defendant filed a proper notice of appeal. On 22 January 2024, Defendant filed a petition for writ of certiorari ("PWC"), addressing his appeal from the SBM proceeding. On 6 May 2024, Defendant filed an additional PWC, addressing his appeal from the plea proceeding.

## II. Jurisdiction

Here, Defendant filed two PWCs: the first addressing the SBM proceeding, and the second addressing the plea proceeding. We will address our jurisdiction in that order.

### A. SBM Proceeding

SBM proceedings are civil. *State v. Brooks*, 204 N.C. App. 193, 194–95, 693 S.E.2d 204, 206 (2010). Therefore Appellate Rule 3, rather than Rule 4, applies to SBM proceedings. *See* N.C. R. App. P. 3. Generally under Rule 3, an appellant must file a notice of appeal "within thirty days after entry of judgment." N.C. R. App. P. 3(c)(1). The notice must "designate the judgment or order from which appeal is taken and the court to which appeal is taken." N.C. R. App. P. 3(d). Timely filing a proper notice of appeal is a jurisdictional requirement. *See Whitlock v. Triangle Grading Contractors Dev., Inc.*, 205 N.C. App. 444, 446, 696 S.E.2d 543, 545 (2010).

We may sanction parties for failing to adhere to our Rules of Appellate Procedure, N.C. R. App. P. 25(b), and we may do so by dismissing their appeal, N.C. R. App. P. 34(b)(1). Dismissal is proper when the appellant's rule violations are

STATE V. BARTON

*Opinion of the Court*

jurisdictional. *See Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 197, 657 S.E.2d 361, 365 (2008).

We lack jurisdiction over Defendant's appeal from the SBM orders because Defendant did not timely file a proper notice of appeal. *See Whitlock*, 205 N.C. App. at 446, 696 S.E.2d at 545. So without jurisdictional relief, we must dismiss Defendant's appeal concerning SBM. *See Dogwood*, 362 N.C. at 197, 657 S.E.2d at 365. Defendant, however, requested relief by filing a PWC.

A PWC is a "prerogative writ" that we may issue to expand our jurisdiction. *See* N.C. Gen. Stat. § 7A-32(c) (2023). But issuing a PWC is an extraordinary measure. *See Cryan v. Nat'l Council of YMCAs of the U.S.*, 384 N.C. 569, 572, 887 S.E.2d 848, 851 (2023). Accordingly, a petitioner must satisfy a two-part test before we will issue the writ. *Id.* at 572, 887 S.E.2d at 851. "First, a writ of certiorari should issue only if the petitioner can show 'merit or that error was probably committed below.'" *Id.* at 572, 887 S.E.2d at 851 (quoting *State v. Ricks*, 378 N.C. 737, 741, 862 S.E.2d 835, 839 (2021)). "Second, a writ of certiorari should issue only if there are 'extraordinary circumstances' to justify it." *Id.* at 572–73, 887 S.E.2d at 851 (quoting *Moore v. Moody*, 304 N.C. 719, 720, 285 S.E.2d 811, 812 (1982)).

"We require extraordinary circumstances because a writ of certiorari 'is not intended as a substitute for a notice of appeal.'" *Id.* at 573, 887 S.E.2d at 851 (quoting *Ricks*, 378 N.C. at 741, 862 S.E.2d at 839). "If courts issued writs of certiorari solely on the showing of some error below, it would 'render meaningless the rules governing

the time and manner of noticing appeals.'" *Id.* at 573, 887 S.E.2d at 851 (quoting *Ricks*, 378 N.C. at 741, 862 S.E.2d at 839). An extraordinary circumstance "generally requires a showing of substantial harm, considerable waste of judicial resources, or 'wide-reaching issues of justice.'" *Id.* at 573, 887 S.E.2d at 851 (quoting *Doe v. City of Charlotte*, 273 N.C. App. 10, 23, 848 S.E.2d 1, 11 (2020)).

Here, Defendant has shown that the trial court likely erred concerning SBM, and unwarranted SBM is a substantial harm. Therefore, we grant Defendant's first PWC. *See id.* at 572, 887 S.E.2d at 851.

**B. Plea Proceeding**

Plea proceedings are criminal. *See* N.C. Gen. Stat. § 15A-1444 (2023). Generally, a defendant "is entitled to appeal as a matter of right when final judgment has been entered." *Id.* § 15A-1444(a). But when a defendant enters a guilty plea, his right to appeal is limited. *See id.* § 15A-1444(a2). A defendant, however, "may petition the appellate division for review by writ of certiorari." *Id.* § 15A-1444(e).

Defendant has shown that the trial court likely erred concerning his probation sentence. And like SBM, an unwarranted extension of probation is a substantial harm. Therefore, we also grant Defendant's second PWC. *See Cryan*, 384 N.C. at 573, 887 S.E.2d at 851.

## III. Issues

The issues on appeal are whether the trial court erred by: (1) ordering Defendant to submit to SBM; and (2) sentencing Defendant to probation after his

post-release supervision.

## IV. Analysis

### A. SBM

In his first argument, Defendant asserts that the trial court erred by ordering him to submit to SBM without making additional findings of fact. We agree.

When reviewing SBM orders, "this Court reviews the trial court's findings of fact to determine whether they are supported by competent record evidence, and we review the trial court's conclusions of law for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found." *State v. Harding*, 258 N.C. App. 306, 321, 813 S.E.2d 254, 265 (2018) (quoting *State v. Springle*, 244 N.C. App. 760, 765, 781 S.E.2d 518, 521–22 (2016)).

When a STATIC-99R places a defendant in the "low risk range," a trial court must make additional findings in order to impose SBM. *See State v. Jones*, 234 N.C. App. 239, 243, 758 S.E.2d 444, 447–48 (2014) (requiring additional findings concerning a "'moderate-low' risk" defendant, which applies *a fortiori* to a "low risk" defendant). Specifically, a trial court may order a low-risk defendant to submit to SBM only if the trial court "makes 'additional findings' regarding the need for the highest possible level of supervision and where there is competent record evidence to support those additional findings." *See id.* at 239, 243, 758 S.E.2d at 447–48 (quoting *State v. Green*, 211 N.C. App. 599, 601, 710 S.E.2d 292, 294 (2011)).

A trial court's order requiring SBM must be reversed, without remand, if the

defendant is low risk, and "the State presented no evidence to support findings of a higher level of risk or to support [SBM]." *See id.* at 243, 758 S.E.2d at 448 (quoting *State v. Kilby*, 198 N.C. App. 363, 370–71, 679 S.E.2d 430, 434 (2009)).

Here, Defendant scored a "1" on his STATIC-99R, placing him in the "low risk range" for recidivism. Therefore, the trial court needed to make additional findings supporting the need for SBM. *See id.* at 243, 758 S.E.2d at 447–48. The State, however, presented no evidence concerning SBM, and the trial court failed to make additional findings. Accordingly, we reverse the SBM orders without remand. *See id.* at 243, 758 S.E.2d at 448.

**B. Probation After Post-Release Supervision**

In his second and final argument, Defendant asserts that the trial court erred by sentencing Defendant's probation to run consecutively with his post-release supervision. Defendant offers two separate statutory arguments for his position: (1) that section 15A-1368.5 requires his post-release supervision to run concurrently with his probation; and (2) that section 15A-1346 requires his probation to run concurrently with his post-release supervision. *See* N.C. Gen. Stat. §§ 15A-1368.5, -1346 (2023). We agree with Defendant's second argument: Section 15A-1346 requires probation to run concurrently with post-release supervision. *See id.* § 15A-1346.

We review sentencing questions de novo. *State v. Patterson*, 269 N.C. App. 640, 645, 839 S.E.2d 68, 73 (2020). Under a de novo review, this Court "'considers the

matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

Probation and post-release supervision are distinct. Probation is served in lieu of imprisonment. *See State v. Duncan,* 270 N.C. 241, 245, 154 S.E.2d 53, 57 (1967). Post-release supervision, on the other hand, is served after the supervisee is released from prison. N.C. Gen. Stat. § 15A-1368(a)(1) (2023). But probation and post-release supervision are similar because both are forms of supervision. *See id.* §§ 15A-1343; 15A-1368(a)(1).

Here, Defendant's offenses require registration, so his period of post-release supervision is five years. *Id.* § 15A-1368.2(c) ("For offenses subject to the registration requirement of Article 27A of Chapter 14 of the General Statutes, the period of post-release supervision is five years."). And here, the trial court sentenced Defendant to five years of probation to begin at the end of Defendant's post-release supervision. Therefore, the trial court sentenced Defendant to be "supervised" for ten years: five under post-release supervision, and five under probation. The question is whether sections 1368.5 or 1346 prohibit this.

Under section 15A-1368.5:

> A period of post-release supervision begins on the day the prisoner is released from imprisonment. Periods of post-release supervision run concurrently with any federal or State prison, jail, probation, or parole terms to which the prisoner is subject during the period, only if the jurisdiction

which sentenced the prisoner to prison, jail, probation, or parole permits concurrent crediting of supervision time.

*Id.* § 15A-1368.5.

"[P]eriod" refers to "[p]eriods of post-release supervision." *See id.* Here, the trial court sentenced Defendant to begin his probation after his post-release supervision. So, assuming the trial court had authority to do this, Defendant is not subject to probation "during the period" of post-release supervision. *See id.* If the assumption is accurate, the "run concurrently" clause is inapplicable to Defendant's sentence. *See id.*

To test the assumption, we must look to section 15A-1346, which details when probation commences. *Id.* § 15A-1346(a)–(b). Under section 15A-1346:

> (a) Commencement of Probation. – Except as provided in subsection (b), a period of probation commences on the day it is imposed and runs concurrently with any other period of probation, parole, or imprisonment to which the defendant is subject during that period.
> (b) Consecutive and Concurrent Sentences. – If a period of probation is being imposed at the same time a period of imprisonment is being imposed or if it is being imposed on a person already subject to an undischarged term of imprisonment, the period of probation may run either concurrently or consecutively with the term of imprisonment, as determined by the court. If not specified, it runs concurrently.

*Id.*

"Except as provided in subsection (b)," subsection (a) clearly says that probation "runs *concurrently with any other period of probation, parole, or*

*imprisonment*." *Id.* (emphasis added). And subsection (b) clearly says that "probation may run either concurrently or consecutively with the term of *imprisonment*, as determined by the court." *Id.* (emphasis added). We have held that the consecutive caveat in subsection (b) only applies to imprisonment—not probation. *State v. Canady*, 153 N.C. App. 455, 459–60, 570 S.E.2d 262, 265–66 (2002).

So the general rule is that probation must run concurrently with other periods of "probation, parole, or imprisonment." N.C. Gen. Stat. § 15A-1346. And there is an exception—but only for imprisonment. *See Canady*, 153 N.C. App. at 459–60, 570 S.E.2d at 265–66. Section 15A-1346, however, does not mention post-release supervision, *see* N.C. Gen. Stat. § 15A-1346, and no caselaw directly answers whether probation can run consecutively with post-release supervision.

We recognize that a missing statutory provision "does not justify judicial legislation." *Ebert v. Poston*, 266 U.S. 548, 554, 45 S. Ct. 188, 190, 69 L. Ed. 435, 438 (1925). But this case presents an unavoidable binary problem: Either (1) probation can run consecutively with post-release supervision, or (2) probation cannot run consecutively with post-release supervision. We cannot decline to resolve this issue, and leave Defendant in limbo, simply because the General Assembly failed to speak on the matter.

Section 15A-1346 is not ambiguous; it simply does not mention post-release supervision, let alone whether probation can run consecutively with post-release supervision. *See* N.C. Gen. Stat. § 15A-1346. In other words, the General Assembly

- 11 -

has not clearly stated whether probation can run consecutively with post-release supervision. *See id.* And under the rule of lenity, we cannot "interpret a statute so as to increase the penalty that it places on an individual when the Legislature has not clearly stated such an intention." *State v. Boykin*, 78 N.C. App. 572, 577, 337 S.E.2d 678, 681 (1985).

Therefore, we cannot interpret section 15A-1346 to allow probation to run consecutively with post-release supervision because doing so would "increase the penalty that it places on" Defendant. *See id.* at 577, 337 S.E.2d at 681. Accordingly, the trial court erred when it sentenced Defendant to submit to probation after post-release supervision; Defendant's probation must run concurrently with his post-release supervision. *See* N.C. Gen. Stat. § 15A-1346. The General Assembly may certainly address this issue by statute if it deems our analysis to be contrary to its intent. This Court, however, declines to enter the legislative lane when the General Assembly has not clearly stated its preference.

On remand, "the parties must return to their respective positions prior to entering into the [plea] agreement." *State v. High*, 271 N.C. App. 771, 845 S.E.2d 150 (2020) (citing *State v. Rico*, 218 N.C. App. 109, 122, 720 S.E.2d 801, 809 (Steelman, J., dissenting) ("Where a sentence is imposed in error as part of a plea agreement, the proper remedy is rescission of the entire plea agreement, and the parties must return to their respective positions prior to entering into the agreement and may choose to negotiate a new plea agreement."), *rev'd per curiam for the reasons stated in the*

*dissent*, 366 N.C. 327, 734 S.E.2d 571 (2012)).  Accordingly, "the plea agreement must be set aside in its entirety, and the parties may either agree to a new plea agreement or the matter should proceed to trial on the original charges in the indictments." *State v. Green*, 266 N.C. App. 382, 392, 831 S.E.2d 611, 618 (2019).

## V.  Conclusion

We conclude that the trial court erred by imposing SBM on Defendant and by sentencing Defendant's probation to run consecutively with his post-release supervision.  We reverse the SBM orders without remand, and we vacate the probation judgments and remand to the trial court.

REVERSED IN PART; VACATED IN PART; AND REMANDED.

Judges STROUD and THOMPSON concur.