IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-640

Filed 19 February 2025

Nash County, No. 19CRS50811

STATE OF NORTH CAROLINA

v.

WALLACE BELFIELD, Defendant.

Appeal by defendant from order entered 11 October 2023 by Judge Timothy W. Wilson in Nash County Superior Court. Heard in the Court of Appeals 30 January 2025.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Sonya Calloway-Durham, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender James R. Grant, for defendant-appellant.*

FLOOD, Judge.

Defendant Wallace Belfield appeals from the trial court's order, which imposed on Defendant a twenty-five-year term of satellite-based monitoring ("SBM"). On appeal, Defendant argues the trial court's order imposing this term of SBM was in error, where Defendant was not at high risk to reoffend, and the trial court's additional findings of fact—unsupported by the evidence—did not support its conclusion that Defendant requires the highest level of supervision and monitoring. Additionally, Defendant contends that some of the State's testimonial evidence was "speculative" and therefore incompetent. Upon review, we conclude the trial court's

additional findings of fact were supported by competent evidence, such that the trial court had proper justification to impose on Defendant the highest level of supervision and monitoring. We further conclude Defendant failed to preserve for our review any argument that the State's evidence was speculative, and Defendant's argument to that effect is therefore dismissed.

## I. Factual and Procedural Background

The following facts are derived in part from those set forth in the opinion of *State v. Belfield*, 289 N.C. App. 720 (2023) (unpublished) (hereinafter, "*Belfield I*"), filed following Defendant's prior appeal to this Court.

On 19 August 2020, this matter was heard in Nash County Superior Court, and that same day, Defendant pled guilty to, *inter alia*, one count of indecent liberties with a child. Defendant was sentenced as a prior record Level VI with twenty-six points, to a presumptive range of 33 to 49 months' imprisonment, and to a second presumptive range of 20 to 23 months' imprisonment.

On 27 October 2020, the State and Defendant appeared for an SBM hearing. The State provided that Defendant, while on post-release supervision for a different offense, pled guilty to another count of indecent liberties. In making this guilty plea, Defendant stipulated to the context under which he committed this offense; namely, that the underaged victim sneaked into the "halfway house" in which Defendant was staying and had sexual relations with Defendant. Additionally, the State presented Defendant's Static-99 sheet—a risk assessment tool used by the North Carolina

Department of Adult Correction to assess a criminal defendant's likelihood of reoffending—where he scored a risk level of five. Defendant, however, contended the Static-99 contained irregularities regarding the name of the person being evaluated, and the trial court continued the matter to allow the State an opportunity to correct the Static-99.

On 21 July 2021, the trial court reconvened to determine whether Defendant required SBM (the "initial hearing"). Dr. Vernon Ted Jamison, the State's witness and a psychologist who conducted the new Static-99 assessment, testified that Defendant's score was actually four, which is a "moderate-high" or "above average risk" of recidivism. Dr. Jamison noted he was unaware of any prior sexual offenses on Defendant's record, and Dr. Jamison attributed Defendant's "moderate-high" Static-99 score to Defendant's criminal record related to violent crimes.

The State next called as a witness Ron West, who is a chief probation officer and sex offender supervisor in Nash County. During his testimony, Mr. West read aloud a relevant portion of the Static-99, which stated that offenders with a score of four "have been found to sexually recidivate at 6.1 to 12.2 percent after five years." The State then asked Mr. West what his "normal recommendation" would be for an offender with a score of four, to which Mr. West replied, "[t]hat the offender definitely be placed on SBM." The State also asked Mr. West if there were any additional factors that would contribute to the higher risk level that are not factored into the Static-99 test. Mr. West replied that, upon review of Defendant's criminal history,

> [Mr. West's] major concern with [Defendant] would be locating him, based upon his frequent use of halfway houses and not having a stable place to live. The primary use of the SBM is just being able to locate an offender that has sex offenses. With a person that does not have a stable residence, it's very important to know where they're at.

After Defendant testified on his own behalf, Defendant's counsel objected to the entry of a finding that SBM is required. After allowing Defendant to make a final statement, the trial court orally ordered that Defendant submit to twenty-five years of SBM, and specifically provided that:

> The Static-99, having revealed that . . . Defendant is a Level [four] for the purposes of determination of [SBM], the Court makes the following findings to support a decision that the use of [SBM] is not cruel and unusual punishment as defined by the State of North Carolina Constitution or the United States Federal Constitution; therefore, the use of this instrument does not violate either the State or Federal Constitution.
>
> In addition, the Court finds that the use of [SBM] reduces recidivism and is a reliable instrument for the stated purpose therein.
>
> The Court orders that . . . Defendant be enrolled in a[n SBM] program for a . . . period of [twenty-five] years upon his release from the Department of North Carolina Public Safety.

The trial court entered its written order on the AOC-CR-615 (11/18) form (the "initial order"), concluding Defendant requires "the highest possible level of supervision and monitoring" and requiring Defendant to enroll in SBM for twenty-five years upon release from imprisonment. The initial order provided that the trial

- 4 -

court's conclusion was based on the risk assessment contained in the Static-99. Further, a checkbox was marked in the initial order, denoting that the trial court's conclusion was also based on "additional findings [found] on the attached [form 618]."

Defendant appealed to this Court, and on 18 July 2023, a prior panel of this Court issued an opinion, where we provided that, while the State presented evidence that "would have supported a finding that Defendant required the highest level of supervision and monitoring[,]" the form 618 was not included in the record on appeal, and the record did "not evince the trial court made the requisite findings of fact." *Belfield I*, at *3. The record on appeal, however, demonstrated that the State presented "evidence at the SBM hearing that would support the highest level" of supervision and monitoring, and this Court therefore vacated and remanded the trial court's order, for the trial court to "consider the evidence and make findings of fact regarding the imposition of SBM." *Id.* at *3 (citation and internal quotation marks omitted).

On 9 October 2023, this matter came on before the trial court for remand hearing. The trial court heard no new evidence, considered the evidence presented during the 21 July 2021 hearing, and on 11 October 2023, entered the following, written "Additional Findings":

> 1. On August 9, 2020, Defendant pled guilty to taking indecent liberties with a child in exchange for the State dismissing one count of statutory rape of a person who is [fifteen] years old or younger and habitual felon.

2. Taking indecent liberties with a child is a sexually violent offense and did involve the physical, mental or sexual abuse of a minor.

3. Defendant had [twenty-six] prior record points for felony sentencing. (See attached State's Exhibit 618-A.)

4. On July 21, 2021, Dr. Ted Jamison, a psychologist who conducted a Static-99 assessment on Defendant, testified that Defendant's score was four, which is "moderate-high" or "above average risk of recidivism." Dr. Jamison attributed Defendant's "moderate-high" Static-99 score to Defendant's criminal record related to violent crimes.

5. On July 21, 2021, Mr. Ron West, chief probation officer and sex offender supervisor in Nash County, testified that he recommended Defendant be placed on SBM.

6. Per the Static-99R risk reporting statements[,] . . . offenders with a Static-99 score of four have been found to sexually recidivate at 6.1 to 12.2 percent after five years. Mr. West testified to this portion of the Static-99 risk reporting statements at said hearing.

7. Mr. West also testified at said hearing that he recommend[s] SBM . . . due to Defendant's Static-99 score and Mr. West's concern about being able to locate Defendant [upon release from prison] based on Defendant's frequent use of halfway houses and Defendant not having a stable place to live. When a person does not have a stable residence, it is very important to know where they are. The primary use of SBM is being able to locate an offender, who has been convicted of sex offenses.

8. When Defendant committed said offense in the above captioned file number, Defendant was residing in a halfway house and was on post-release supervision for a different offense.

9. Based on Mr. West's testimony regarding his recommendation, recidivism rates from the Static-99R risk

reporting statements, his concerns about locating . . . Defendant upon release from prison and additional factors that would contribute to a higher risk level, which are not factored into the Static-99, this court finds that Defendant requires the highest level of supervision and monitoring.

Therefore, the court's order for [SBM] . . . post-assessment entered herein on July 21, 2021, is re-adopted by the undersigned and is, along with the judicial finding set forth on form AOC-CR-615, incorporated herein by reference as though again fully set forth with these additional findings.

Defendant timely appealed.

## II. <u>Jurisdiction</u>

"[T]his [C]ourt has jurisdiction to consider appeals from SBM monitoring determinations under N.C.[G.S.] § 14-208.40B [(2023)] pursuant to N.C.[G.S.] § 7A-27 [(2023)]." *State v. Singleton*, 201 N.C. App. 620, 626 (2010).

## III. <u>Analysis</u>

Defendant argues on appeal that the trial court's order imposing the twenty-five-year term of SBM was in error, where Defendant was not at high risk to reoffend, and the trial court's Additional Findings were insufficient to support its conclusion that Defendant requires the highest level of supervision and monitoring. We disagree.

On appeal from an order imposing SBM, "we review the trial court's findings of fact to determine whether they are supported by competent record evidence, and we review the trial court's conclusions of law for legal accuracy and to ensure that those conclusions reflect a correct application of law to the facts found." *State v.*

*Opinion of the Court*

*Kilby*, 198 N.C. App. 363, 367 (2009) (quoting *State v. Garcia*, 358 N.C. 382, 391 (2004)). "The trial court's findings of fact are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Blankenship*, 270 N.C. App. 731, 735 (2020) (citation and internal quotation marks omitted).

The purpose of SBM "is to supervise certain offenders whom the legislature has identified as posing a particular risk to society[,]" *State v. Morrow*, 200 N.C. App. 123, 131 (2009) (citation and internal quotation marks omitted), and the procedure for SBM hearings is found in N.C.G.S. §§ 14-208.40A and 14-208.40B (2023). When a defendant has been convicted of an applicable offense, and the trial court has not previously determined during the sentencing phase whether SBM is required, N.C.G.S. § 14-208.40B applies. *See* N.C.G.S. § 14-208.40B(a). Here, Defendant had been convicted of indecent liberties with a child, an applicable offense, and the trial court did not make an SBM determination when Defendant was sentenced; N.C.G.S. § 14-208.40B therefore governs. *See* N.C.G.S. § 14-208.40B; *see also Morrow*, 200 N.C. App. at 131.

In making an SBM determination, based on the results of a defendant's risk assessment and any other evidence presented by the State or the defendant, the trial court must decide whether the defendant requires "the highest possible level of supervision and monitoring." *See* N.C.G.S. § 14-208.40B; *see also Kilby*, 198 N.C. App. at 367 n.2 ("The highest level of supervision and monitoring simply refers to SBM." (internal quotation marks omitted)). If the trial court determines that the

defendant is eligible for SBM, "the State shall bear the burden of proving that the [SBM] program is reasonable." *State v. Greene*, 255 N.C. App. 780, 783 (2017) (citation and internal quotation marks omitted). Moreover, "the State must present additional evidence to support a determination that the offender requires the highest possible level of supervision and monitoring[,]" and such additional evidence cannot be as to matters already addressed in the defendant's Static-99 risk assessment, such as the defendant's underlying offense. *State v. Thomas*, 225 N.C. App. 631, 633–34 (2013).

Absent a "high risk" Static-99 score, in addition to the State offering additional evidence, the trial court must "make additional findings[] in order to justify a maximum SBM sentence." *Id.* at 634; *see also Kilby*, 198 N.C. App. at 369. While such additional findings cannot be based solely on matters already addressed in a defendant's Static-99 risk assessment, *see Thomas*, 225 N.C. App. at 634, "the trial court may consider the context under which the crimes occurred, revealed in the factual basis for [a d]efendant's guilty plea, when making additional findings as to the level of supervision required of a defendant[.]" *Blankenship*, 270 N.C. App. at 737 (citation and internal quotation marks omitted).

Regarding the trial court's additional findings of facts, in *State v. Green*, this Court considered the defendant's appeal from the trial court's SBM order imposing the highest level of supervision and monitoring. 211 N.C. App. 599, 600 (2017). Upon review, this Court upheld the trial court's order, and provided that, although the

defendant had been assessed in the "moderate-low" risk range, "based on the facts that the victims were very young and that [the defendant] did not receive any sex offender treatment[,]" the trial court properly determined that the defendant required the highest level of supervision. *Id.* at 604–05. Likewise, in *State v. Smith*, this Court upheld an SBM order where the bases of the trial court's additional findings were "the age of the alleged victims, the temporal proximity of the events, and [the] defendant's increasing sexual aggressiveness." 240 N.C. App. 73, 76 (2015). By contrast, in *State v. Jones*, this Court reversed the trial court's SBM order where the State failed to present any evidence, other than the defendant's Static-99 risk assessment score, to support a finding that he required the highest level of supervision and monitoring. 234 N.C. App. 239, 246–47 (2024).

Here, the Record demonstrates that, in making its Additional Findings and in accordance with our opinion in *Belfield I*, the trial court considered the following, additional evidence presented by the State: (1) that, per Defendant's stipulation to the factual basis of the underlying offense, Defendant was residing in a halfway house at the time he committed indecent liberties with a child; (2) Mr. West's testimony, where he expressed concern about being able to locate Defendant, due to "Defendant's frequent use of halfway houses and Defendant not having a stable place to live[,]" and explained that "[t]he primary use of SBM is being able to locate an offender, who has been convicted of sex offenses"; (3) the relevant recidivism rates; and (4) Mr. West's recommendation that Defendant receive the highest level of supervision. This is

competent evidence—beyond evidence of matters already addressed in Defendant's Static-99 risk assessment—in support of the trial court's Additional Findings 5, 6, 7, and 8. *See Green*, 211 N.C. App. at 604–05; *see also Smith*, 240 N.C. App. at 76; *Jones*, 234 N.C. App. at 246–47; *Blankenship*, 270 N.C. App. at 735, 737; *Kilby*, 198 N.C. App. at 369. As these Additional Findings are supported by competent evidence, they are binding on appeal. *See Blankenship*, 270 N.C. App. at 735.

Defendant, however, contends the trial court's Additional Findings do not legally justify its imposition of the highest level of supervision and monitoring, as these findings were based on the trial court's consideration of improperly duplicative evidence of matters already addressed in Defendant's Static-99 risk assessment. We find Defendant's contention unpersuasive. As explained above, while the trial court's additional findings cannot be based solely on matters already addressed in the Static-99 risk assessment, because Additional Findings 5, 6, 7, and 8 are supported by competent evidence other than that of a defendant's risk assessment, they are binding on appeal. *See Blankenship*, 270 N.C. App. at 735; *see also Jones*, 234 N.C. App. at 246–47. Assuming, *arguendo*, Additional Findings 1 through 4 are based on evidence duplicative of matters addressed in Defendant's Static-99 risk assessment, the State—as in *Green* and *Smith*, and unlike in *Jones*—met its evidentiary burden of additional evidence in support of Additiional Findings 5 through 8. *See Green*, 211 N.C. App. at 604–05; *see also Smith*, 240 N.C. App. at 76; *Jones*, 234 N.C. App. at 246–47. Moreover, Additional Finding 9—where the court articulates its conclusion

that Defendant requires the highest level of supervision and monitoring—is based expressly on the evidentiary considerations indicated in Additional Findings 5 through 8. *See* N.C.G.S. § 14-208.40B; *see also Kilby*, 198 N.C. App. at 367 n.2; *Greene*, 255 N.C. App. at 783.

Accordingly, upon our review, we conclude that: the context of Defendant committing a sexual offense in the halfway house; the concern of not being able to locate Defendant, who still makes "frequent use" of halfway houses and does not have "a stable place to live"; the primary purpose of the SBM program being "to locate an offender that has sex offenses"; the relevant recidivism rates; and the recommendation of Mr. West—a chief probation officer tasked with implementing the SBM program—that Defendant receive the highest level of supervision and monitoring, collectively justify the trial court's conclusion that such level of supervision and monitoring is required for Defendant. *See Kilby*, 198 N.C. App. at 367; *see also Thomas*, 225 N.C. App. at 634. We therefore affirm the trial court's SBM order.

Defendant also contends Mr. West's testimony regarding Defendant's frequent use of halfway houses was "speculative," and as such, Additional Finding 7 is not supported by competent evidence. Defendant, however, failed to object at the initial hearing to the introduction of this allegedly speculative evidence. As such, per Rule 10 of the North Carolina Rules of Appellate Procedure, Defendant failed to preserve for our review his argument regarding Mr. West's testimony, and we decline to invoke

Rule 2 to consider this contention. *See* N.C.R. App. P. 10(a)(1) ("In order to preserve an issue for appellate review, a party must have presented to the trial court a timely . . . objection, . . . stating the specific grounds for the ruling the part desired the court to make[.]"); *see also* N.C.R. App. P. 2. This argument is therefore dismissed.

## IV. <u>Conclusion</u>

Upon review, we conclude the trial court's additional findings of fact were supported by competent evidence, such that the trial court had proper justification to impose on Defendant the highest level of supervision and monitoring. We further conclude Defendant failed to preserve for our review any argument concerning competency of the State's testimonial evidence, and Defendant's argument to that effect is therefore dismissed.

AFFIRMED In Part, and DISMISSED In Part.

Judges HAMPSON and STADING concur.